**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COLUMBUS DURHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:18CV1184 HEA |
| | ) | |
| LABORERS' BENEFITS ST. LOUIS, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 22]. Plaintiff opposes the Motion. Also pending before the Court is Plaintiff's April 27, 2020 filing requesting various actions of the Court [Doc. No. 31]. For the reasons set forth below, the Motion for Summary Judgment is granted, and Plaintiff's requests in Doc. No. 31 are denied.

### Facts

Defendants have, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Plaintiff has failed to respond to these facts. Local Rule 4.01(E) provides:

Rule 4.01 Motions and Memoranda.

(E) A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is

> established by the record, and, if so, the appropriate citations. Every
> memorandum in opposition shall include a statement of material facts as to
> which the party contends a genuine issue exists. Those matters in dispute
> shall be set forth with specific references to portions of the record, where
> available, upon which the opposing party relies. The opposing party also
> shall note for all disputed facts the paragraph number from movant's listing
> of facts. All matters set forth in the statement of the movant shall be deemed
> admitted for purposes of summary judgment unless specifically controverted
> by the opposing party.

Plaintiff failed to follow this rule. *Pro se* litigants are not excused from complying

with substantive and procedural law, including the Court's Local Rules.

*Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988); *Bunch v.*

*Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017).

Defendants' facts are deemed admitted pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Local Rule 4.01(E).

The undisputed facts are as follows:

Construction Laborers' Pension Trust of Greater St. Louis ("the Trust") is a

Taft-Hartley employee benefit plan that is jointly administered by a Board of

Trustees comprised of six union-appointed trustees and six employer-appointed

trustees. Defendants Gary Elliott, Don Willey, David Gillick, and William L. Luth

are four of the Trustees of the Trust. Jeanette Scopino ("Scopino") is the Pension

Director of the Trust. The Trust is an employee benefit plan as defined in the

Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. §§ 1001 et

seq., and is subject to that Act. The Trust is financed by contributions from

employers who are signatory to collective bargaining agreements with Laborers
Locals 42 and 110 and the Eastern Missouri Laborers' District Council. Signatory
employers make contributions to the Trust for each hour of work performed by an
employee who performs work covered by the collective bargaining agreement
("covered work"). The eligibility requirements for a benefit from the Trust are set
forth in Article 3 of the Plan Document. The procedure for calculating the amount
of the pension benefit for an eligible employee is also set forth in Article 3 of the
Plan Document.

Plaintiff Columbus Durham ("Plaintiff") performed covered work for
approximately 17 years. For that work, his employers paid contributions on his
behalf to the Trust. When Plaintiff retired in 2011, he was entitled to a pension
benefit from the Trust. He began receiving a monthly pension benefit from the
Trust in June 2011. At retirement, Plaintiff elected the Single-Life Annuity/36-
month Guarantee, Level Income Option pension, which provides a higher benefit
until age 62 or 65 (the participant's choice,) at which point the benefit is reduced.
At retirement, Plaintiff had two Qualified Domestic Relations Orders ("QDROs")
in favor of his two ex-spouses that the Trust was required to account for in
determining the amount of the Plaintiff's monthly pension benefit. On July 20,
2011, then-Pension Coordinator Alicia Schonaerts-Difani, on behalf of the Trust,
informed Plaintiff that he would be receiving a monthly pension benefit of

[3]

$3,432.00 per month, which would decrease to $2,608.26 per month after he reached 65 years of age.

Subsequently, Schonaerts-Difani left her job with the Trust. Sometime later, several mistakes in pension benefit calculations were brought to the attention of the Trust's Administrative Manager, Kevin Schell. Schell then instructed Scopino to review recently granted pension applications. After review, Scopino determined that the pension benefit calculations for Plaintiff and four other retirees had been incorrectly calculated by Schonaerts-Difani, who used incorrect actuarial factors and failed to apply early retirement factors. Schonaerts-Difani also did not account for Plaintiff's two QDROs when calculating Plaintiff's benefit. The Trust asked its actuaries, Segal Consulting, to recalculate the pension benefit for the five retirees with miscalculated benefits. Due to the miscalculation, between June 2011 and August 2012 Plaintiff received $6,232.50 of overpaid pension benefits to which he was not entitled. Plaintiff's revised pension benefit was $2,971 per month. The revised pension benefit included an actuarial adjustment lowering Plaintiff's payment to account for the overpayment; that is, rather than demand immediate repayment, the Trust would recoup the overpayment over Plaintiff's expected lifetime.

Schell sent Plaintiff a letter dated September 17, 2012 informing Plaintiff of the overpayment and monthly benefit reduction. Schell requested that Plaintiff

[4]

meet with the new Pension Coordinator to discuss the repayment of the $6,232.50 and the pension options available to Plaintiff, should he choose to elect a different option. In October 2012, Plaintiff met with Trust staff for this purpose. Plaintiff walked out of that meeting. He did not make a different benefit election.

On October 20, 2012, a second letter was sent to Plaintiff reminding him of his right to elect a different benefit option. On November 26, 2012, Schell sent a third letter to Plaintiff, again reminding him to make a benefit election. Again, a list of the available pension options was also included. Again, Plaintiff did not make a new benefit election. The Trust continued to pay benefits in accordance with the pension option originally elected by the Plaintiff, i.e. Single-Life Annuity/36-month Guarantee, Level Income Option. In November 2016, Plaintiff turned 65. In accordance with his pension option, Plaintiff's monthly pension benefit was reduced to $1,528 effective December 2016.

The Plan Document provides a procedure for participants to appeal benefit decisions to the Board of Trustees ("the Board"). On March 5, 2014, after a phone conversation with the Plaintiff, Scopino sent Plaintiff a letter explaining that he could appeal to the Board his claim that he was entitled to continue to receive the monthly pension benefit he had been awarded at the time of his retirement. The letter explained that the appeal had to be received within 180 days of the date of the letter.

[5]

In May 2014, an attorney representing Plaintiff, Clyde Cahill, called the Trust asking about a decision on the appeal. Schell and Scopino left Cahill a voicemail stating that the Trust had not received an appeal from Plaintiff. The Trust received a letter from Cahill dated June 2, 2014 asking for certain information. Schell responded by letter dated June 20, 2014, providing the requested information and a copy of the Trust's Summary Plan Document. No appeal was received within 180 days of the March 5th letter.

On June 4, 2015, Plaintiff's new attorney, Sandra Moore-Dyson, requested Plaintiff's "file" from the Trust. In response, Scopino emailed Moore-Dyson a copy of the "right to appeal" letter that was sent to Plaintiff in March 2014 and informed her that the Trust had not received a written appeal from Plaintiff as of June 4, 2015. Eleven months later, on May 10, 2016, Moore-Dyson sent a letter to the Trust requesting an appeal of Plaintiff's pension determination. With this letter, Moore-Dyson enclosed a letter from a different lawyer dated March 12, 2014 and an affidavit from Plaintiff dated August 7, 2014 that had purportedly been submitted in 2014 as an appeal of Plaintiff's benefit determination to the Trust in 2014. Prior to its receipt of Moore-Dyson's May 10, 2016 letter, the Trust had not received the March 2014 letter or August 2014 affidavit. Moore-Dyson stated in her letter that she had received the requested records from the Pension Trust and did not request any additional documents from the Pension Trust in this letter.

Though the appeal was untimely, the Trust agreed to process the 2016 appeal as if it was timely filed. The Board of Trustees denied the appeal. The trust sent a letter to Plaintiff's lawyer on July 22, 2016 explaining the denial. Throughout this process, the Trust received multiple requests for information and documentation from Plaintiff and his attorneys. In response to each request, the Trust promptly provided the requested information.

In her role as Pension Director, Scopino does not have or exercise any discretionary or decision-making authority over the management of the Trust; she does not have any discretionary or decision-making authority over the Pension Fund's assets; and she does not have the authority to, nor does she give, investment advice regarding the Trust's assets.

## Procedural Background

Plaintiff's Claims

In his Complaint, Plaintiff states that he "brings this action under Section 502(a) of ERISA, 29 U.S.C. [1132]."[1] Plaintiff asserts that this action is "to recover pension due" to him "pursuant to a retirement agreement entered between Defendants and Plaintiff." Plaintiff also alleges that Defendants have "refused or omitted to furnish information concerning benefits to" him, a pension plan

---

[1] The complaint references "29 U.S.C. 1131." This is very likely a typo, as Section 1131 addresses criminal penalties, while it is Section 1132 that addresses civil actions under ERISA.

participant, in violation of 29 U.S.C. §1025. Specifically, Plaintiff alleges that Defendants willfully failed to provide him with "information regarding the formula used to calculate the correct amount of Plaintiff's pension."

Plaintiff also makes repeated statements, both in his Complaint and other pleadings, about his reliance on Schonaerts-Difani's statements regarding his pension benefit. Plaintiff states that he relied on Schonaerts-Difani's statements regarding early retirement and the pension benefit amount she calculated in deciding to retire early and to get a surgery that has rendered him unable to go back to work. Construing Durham's *pro se* Complaint liberally, as the Court does under *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), Plaintiff's statements could be read as a claim of equitable estoppel.

As for relief, Plaintiff requests the Court award him "an amount equal to the amount originally calculated as Plaintiff's award amount," that is, the monthly pension benefit amount calculated by Schonaerts-Difani.

Discovery

The Case Management Order entered May 13, 2019 dictated that discovery be completed by August 16, 2019. On May 23, 2019, Plaintiff moved for an extension of time to hire an attorney. On May 24, the Court entered an order stating "Plaintiff has a continued duty to secure counsel. The case management

order is still in effect and Plaintiff is still required to meet deadlines whether with or without counsel."

On June 13, 2019, Plaintiff filed a document asking the Court to subpoena Defendants for records of the audit mentioned in one of the Trust's letters to Plaintiff. Plaintiff also asked the Court to subpoena non-party Schoneaerts-Difani. Plaintiff did not serve any discovery requests on the Defendants, nor did he comply with Local Rule 3.04 which requires a party to confer with the other party in a good faith effort to resolve any discovery issues before filing a motion to compel with the Court. Plaintiff's request for the Court to subpoena Schonaerts-Difani was not only improper but also vague as to the type of subpoena sought. Accordingly, the Court denied Plaintiff's requests and directed Plaintiff to the District Court Clerk's Office for resources regarding the issuance of subpoenas.

It should also be noted that Defendants, through counsel, averred that "[a]t no time prior to (or after) the discovery deadline of August 16, 2019, has plaintiff served any discovery requests on defendants." Plaintiff does not dispute that he never served Defendants with any discovery requests.

Motion for Summary Judgment

In support of their Motion for Summary Judgment, Defendants deny that they failed to provide Plaintiff with information at any time, argue that they are obligated under ERISA to reduce Plaintiff's benefit to the correct amount allowed

by the Trust's Plan Document and have a duty to recover mistakenly paid benefits, and argue that Scopino should be dismissed as a defendant to this action because she is not a fiduciary of the Trust[2].

Defendants also submitted their statement of undisputed material facts in support of their motion, as well as exhibits thereto. These exhibits include the Plan Document and correspondence between the parties. Plaintiff did not properly respond to Defendants' statement of facts nor submit his own statement of facts.

In his memorandum in opposition to Defendants' Motion for Summary Judgment, Plaintiff does not dispute any of the facts asserted by Defendants. Rather, Plaintiff argues that he relied on the information provided to him by Schonaerts-Difani and that he did not suspect that the information she gave him was erroneous. Plaintiff states that he relied on the benefit amount calculated by Schoenaerts-Difani in deciding to get the neck surgery that has rendered him unable to work, and that his now-reduced benefit has caused him a hardship. Plaintiff also argues that he is "not in agreement with" the "summary judgment that was motioned by [defendant's attorney] Janine M. Martin" because his lawsuit is directed at Defendants. To the extent Plaintiff is arguing that an attorney cannot file motions for their clients, Plaintiff is wholly incorrect.

---

[2] The Court, finding that each of Plaintiff's complaints fail as a matter of law against all Defendants, does not reach the issue of Scopino's fiduciary status.

Plaintiff ends his memorandum in opposition to summary judgment with text apparently copied from a British organization called The Pensions Ombudsman.[3] The Pensions Ombudsman is "an independent organisation set up by law. We can help if you have a complaint or dispute about a pension scheme provided by your employer or a pension you have set up yourself."[4] Of course, the Pensions Ombudsman's decision summaries that Plaintiff includes in his memorandum are based in British law and have no precedential value in this Court.

Plaintiff's Requests for Various Relief [Doc. No. 31]

Plaintiff filed another document on April 27, 2020 which can be construed as several motions to the Court. First, Plaintiff accuses Defendants of spoliation of evidence and obstruction regarding records of an audit, submits a letter from Kevin Schell that mentions an audit, and requests "[his] day in court" on the issue. Second, Plaintiff asks the Court to subpoena non-party Schell to testify as to the existence of an audit, disregarding the Court's earlier directive involving subpoenas. Plaintiff then argues that Defendants cannot support their contention that his original benefit was erroneously calculated without records of an audit, again complains of not receiving records of an audit, and states that he relied on Schonaerts-Difani's statements that there was no early retirement penalty in

---

[3] See www.pensions-ombudsman.org.uk.
[4] Id. (last visited July 15, 2020).

electing to retire early. Finally, Plaintiff states "I'm just trying to prove my point that I have been lied to and mislead (sic) with wrong information."

First, there is no evidence of spoliation. Second, the discovery deadline in this case was August 16, 2019. Plaintiff never served requests for discovery on Defendants and now is out of time to do so. Similarly, he is out of time to subpoena Schell. Third, Plaintiff fails to state any reason that he should be entitled to a hearing on his theory that his original benefit was correct and that no audit ever happened. Accordingly, Plaintiff's requests in Doc. No. 31 are denied.

Finally, to the extent that Plaintiff's request for his "day in court" and assorted arguments might be construed as arguments against summary judgment, the Court will generously construe them as such, even though the time for briefing on Defendants' Motion for Summary Judgment has long passed.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving

party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record,

[13]

decide credibility questions, or determine the truth of any factual issue."

*Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000).

## Discussion

Claim for Failure to Provide Information

     Plaintiff alleges that Defendants did not provide him with the underlying

calculation used to determine his pension benefit or records of the "audit"

mentioned in Schell's September 17, 2012 letter. The ERISA civil enforcement

provision provides:

> Any administrator who fails or refuses to comply with a request for
> any information *which such administrator is required by this*
> *subchapter to furnish to a participant or beneficiary* ... may in the
> court's discretion be personally liable to such participant or
> beneficiary in the amount of up to $100 a day from the date of such
> failure or refusal....

29 U.S.C. § 1132(c) (emphasis added). The documents which a plan administrator

is required to furnish to an employee on written request are listed in 29 U.S.C. §

1024(b)(4).

     Plaintiff's claim that Defendants' failed or refused to provide information as

required under ERISA fails because the underlying calculations of a participant's

benefit amount and audit records are not listed in in 29 U.S.C. § 1024(b)(4). *See*

*also Aliff v. BP Am., Inc.*, 826 F. Supp. 178, 188 (S.D.W. Va. 1993), *aff'd,* 26 F.3d

486 (4th Cir. 1994) (ERISA "does not require the plan administrator to supply a

copy of the pertinent actuarial report.") Accordingly, 29 U.S.C. § 1132(c) is not

[14]

triggered and Plaintiff is not entitled to civil damages thereunder. Defendants are

entitled to summary judgment on Plaintiff's claim that they failed to provide

information.

Claim to Recover Pension Due

Plaintiff's pleadings can be construed as a claim that the benefit originally

quoted by Schonaerts-Difani was correct, and that Defendants now are wrongfully

withholding part of the pension benefit to which Plaintiff is entitled. However, this

claim also fails as a matter of law.

The undisputed facts are that Schonaerts-Difani miscalculated Plaintiff's

pension benefit by failing to apply appropriate actuarial and early retirement

factors and by failing to account for Plaintiff's two QDROs. Plaintiff did not

dispute these facts. Plaintiff did not respond to Defendants' statement of material

facts as required by F.R.C.P. 56 and Local Rule 4.01(E), nor did he contend that

his original pension benefit amount was correct in his memorandum in opposition

to summary judgment. In that memorandum, Plaintiff argued only that he had

detrimentally relied on the information given him by Schonaerts-Difani.

In his most recent filing, [Doc. No. 31], Plaintiff states "with no records of

the audit where are the facts that support there was an error? . . . The

administration cannot say there is an error when there are no facts to support their

accusation."[5] This statement is not sufficient to defeat summary judgment because it is self-serving, conclusory, and it is not supported by any affirmative evidence. *Armour and Co., Inc.,* 2 F.3d at 279.

Plaintiff also does not dispute Defendants' asserted right to recoup the benefits that were overpaid to him. Defendants have met their burden on summary judgment by presenting facts showing that Plaintiff had received money to which he was not entitled from the Trust, and that the Trust could recoup that money by deducting an portion of Plaintiff's benefit payments each month until the total sum was recovered. Plaintiff did not offer any law or facts in opposition to Defendants' assertions regarding this recoupment.

There is no genuine dispute that Plaintiff was not entitled to the benefit amount originally calculated by Schonaerts-Difani. There is no genuine dispute that Defendants are entitled to reduce Plaintiff's monthly benefit payment to recover the prior overpayments made to him. Defendants are entitled to summary judgment on Plaintiff's claim that he is owed pension due.

---

[5] Defendants have stated sufficient facts regarding the discovery of Plaintiff's erroneous benefit. Defendants explained in their response to Plaintiff's first motion to compel audit records that the "audit" was a "review" of recently granted pension applications by Scopino when she began working for the Trust in June 2012. Defendants cited specific paragraphs of Scopino's affidavit in which she averred that Schell tasked her with the review because of mistakes found in several of Schonaerts-Difani's benefit calculations. Scopino averred that she found five incorrectly calculated benefits, one of which was Plaintiff's. Scopino added that the Schonaerts-Difani erred by not using an early retirement factor and not accounting for Plaintiff's QDROs when calculating Plaintiff's benefit.

Estoppel Claim

Plaintiff repeatedly states in his filings, particularly in his motion in opposition to summary judgment, that: he relied on the benefit amount quoted by Schonaerts-Difani in deciding to retire early, he did not suspect any errors in his benefit calculation, he would have not have retired early had he known the true benefit amount, he had a disabling neck surgery in reliance on the benefit calculated by Schonaerts-Difani, and he has endured a hardship as a result of the incorrectly calculated benefit. These statements can be construed as an estoppel claim.

Courts are understandably reluctant to permit estoppel claims against a multiemployer benefit plan like the Trust because "estoppel can have the adverse effect of allowing an improper depletion of plan assets to benefit one employer and its employees at the expense of others." *Slice v. Sons of Norway*, 34 F.3d 630, 633 (8th Cir. 1994) (citing *Black v. TIC Inv. Corp.,* 900 F.2d 112, 114–15 (7th Cir. 1990)).

The Eighth Circuit has stated specifically that when a plaintiff "[seeks] to enforce his employer's erroneous written statement of what his early retirement benefits would be" an estoppel claim is "not actionable where the plaintiff had failed to establish that the estoppel would merely hold his employer to a plausible interpretation of the retirement plan, rather than a modification of the plan." *Slice*,

34 F.3d at 635 (citing *Law v. Ernst & Young,* 956 F.2d 364, 367–68 (1st Cir.1992)). Here, Plaintiff has not alleged any plausible interpretation of the Trust that would allow it to pay him a benefit without the proper early retirement and QDRO adjustments. Rather, the Plan Document plainly sets out the early retirement reduction factors for any participant who retires before age 62. Under ERISA and the Plan Document, the Trust must also adjust a participant's benefit to account for any QDROs. In short, the Trust cannot pay Plaintiff an unadjusted pension benefit which is clearly not based on any plausible interpretation of the Trust's governing documents. Plaintiff's estoppel claim fails as a matter of law.

### Conclusion

Based on the foregoing analysis, Defendants are entitled to summary judgment on each of Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 22], is **GRANTED**.

**IT IS FURTHER ORDERED** that the requests set forth in Plaintiff's April 27, 2020 filing [Doc. No. 31] are **DENIED**.

A separate judgment in accordance with this Opinion, Memorandum and

Order is entered this same date.

Dated this 20th day of July, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE